Borough of Ambridge, Appellant, v. P. S. C.

Argued November 17, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*Thompson Bradshaw* of *May & Bradshaw,* for appellant, cited: Citizens Electric Illuminating Co. v. L. & W. V. R. R. Co., 255 Pa. 176; Beetem v. Carlisle Heat & Power Company, 273 Pa. 82.

*E. Everett Mather, Jr.,* Assistant Counsel, and *John Fox Weiss,* Counsel, for appellee, cited: Jacobs v. Clearview Water Co., 220 Pa. 388; Pennsylvania Chautauqua v. Public Service Commission, 105 Pa. Superior Ct. 160.

*Allen T. C. Gordon* of *Smith, Buchanan, Scott & Gordon,* for intervening appellee, cited: Wolff Co. v. Court of Industrial Relations of Kansas, 262 U. S. 522; Thayer v. California Development Co., 164 Cal. 117.

OPINION BY STADTFELD, J., March 3, 1933:

This is an appeal by the Borough of Ambridge from the order of the Public Service Commission dismissing its complaint against A. M. Byers Company which is charged with operating as a public service company without having obtained a certificate of public convenience from the Public Service Commission.

The complaint alleged that the Borough of Ambridge had for a number of years been supplying water to the public for domestic and manufacturing purposes, and in 1918 had extended its water lines beyond its corporate limits into Harmony Township, adjacent thereto, and since then has been supplying water for ordinary and domestic purposes to persons and corporations in said Harmony Township; that as a result of its plant extensions complainant is adequately equipped to supply water for domestic and manufac-

turing use to persons and corporations in said township; that since 1918 it has been supplying large quantities of water to Standard Seamless Tube Company, now the Spang-Chalfant Company; that no public service company has been furnishing water in complainant borough or said township since the Borough of Ambridge commenced to supply water therein.

It further alleged that respondent, A. M. Byers Company, having erected a large manufacturing plant on its property in Harmony Township, constructed a water works plant of its own for the purpose of drawing water from the Ohio River by which it could supply water not only for its own use but also other manufacturing plants and particularly Spang-Chalfant Company; that about August, 1930, it commenced to supply water for manufacturing purposes to said Spang-Chalfant Company whose plant is located contiguous to respondent's plant in Harmony Township; that since said time neither company has taken water from the borough system except for drinking and fire protection and except on special occasions when respondent was unable to furnish sufficient supply, Spang-Chalfant Company drew on the borough lines for supply; that the borough's loss of revenue formerly derived from Spang-Chalfant Company amounts approximately to $2,500 a month. The complaint further averred that respondent is a manufacturing corporation and not in law a public service company, but is carrying on the functions of a public service company in producing and selling water without having obtained a certificate of public convenience, as required under the Public Service Company Law of 1913. The borough sought an order from the commission requiring the A. M. Byers Company to desist from supplying water to Spang-Chalfant Company, or any other person or corporation in Harmony Township or elsewhere unless and until it shall have obtained a certificate of public convenience.

A. M. Byers Company, to this petition, filed a motion to dismiss the complaint, thereby admitting the facts stated therein, contending that its supplying of water in the manner alleged is not the function of a public service company and is not ultra vires, but is only incidental to its corporate purpose, and contending that if the Public Service Law, Act of 1913, P. L. 1374, as amended, be construed as applying to respondent, said act so construed is contrary to Art. I, Section 9, of the Constitution of Pennsylvania and the Fourteenth Amendment to the Constitution of the United States.

The commission found that A. M. Byers Company was not operating as a public service company under the facts alleged, and dismissed the complaint. From that order this appeal has been taken by the Borough of Ambridge.

The question in this case lies within a comparatively narrow compass. The sole question is whether A. M. Byers Company, in selling water to Spang-Chalfant Company in the manner indicated, is operating as a public service company. There is no averment of the sale to any other person or corporation, nor of holding out or readiness to serve the public.

There is a well recognized distinction between the right of public regulation of private as distinguished from public businesses. "Those engaged in a public calling have always been under the extraordinary duty to`serve all comers, while those in a private business may always refuse to sell if they please. So great a distinction as this constitutes a difference in kind of legal control rather than merely one of degree." Wyman on Public Service Corporations, p. 1, "The general proposition holds true as to all public employments—that all must be served, adequate facilities must be provided, reasonable rates must be charged, and no discrimination must be made." Ibid, p. 32.

In Pennsylvania, the service subject to regulation is defined by the act to include (Art. I, Section 1, Act of July 26, 1913, P. L. 1374, 66 Purdon 1) "Any and all acts done, rendered or performed, and any and all things furnished or supplied, and all and every the facilities used and furnished or supplied by public service companies in the performance of their duties to their *patrons, employees and the public* ......". (Italics ours.)

An examination of our public service act discloses that regulation thereunder is contemplated only in connection with a *public service*.

The Byers Company is a private manufacturing corporation; it has no charter rights to supply water to the public; it has no grant of any rights to occupy streets or other public property with water lines, and therefore has neither rights nor power to render public service. The furnishing of water to a single consumer in no way involves a public interest; nor can it be said that by its act that it has devoted its water business to a public use under which the public has acquired an interest and thereby subjected itself to public regulation.

Under Art. I, Section 1, of the Public Service Company Law (66 Purdon 1), the term "public service company" includes "all ...... water corporations ...... doing business within this State, and also persons engaged for profit in the same kind of business within this Commonwealth ...... and provided further, that none of the provisions of this act shall apply ...... to the furnishing or distribution of water ...... by a producer, who is not otherwise a public service company, for the sole use of such producer, or for the use of tenants of such producer, and not for sale to others."

A water corporation is defined by the Act of April 29, 1874, P. L. 73, as a corporation created for "the

supply of water to the public." Although A. M. Byers Company is not a water company, if it were supplying or holding itself out as ready to supply the public in the same manner as a water company it would come within the provisions of the act of assembly. It is the character of service which it renders which determines its status under the act: City Transfer Co. v. Public Service Commission, 93 Pa. Superior Ct. 210; Pennsylvania Chautauqua v. Public Service Commission, 105 Pa. Superior Ct. 160, 160 Atl. 225. The Public Service Commission is limited in its jurisdiction to the regulation of public service as distinguished from private service. In Wyman on Public Service Corporations, Vol. 1, Sec. 242, page 213, the distinction is thus stated: "Water works and irrigation systems will be public or private, according to whether there is a public profession or private dealing in the particular case."

In 51 Corpus Juris 5 we find the distinction between public and private rendition of such service put definitely on the readiness to serve all members of the public to the extent of capacity.

"The test is, therefore, whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or to any limited portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals. The public or private character of the enterprise does not depend, however, upon the number of persons by whom it is used; but upon whether or not it is open to the use and service of all members of the public who may require it, to the extent of its capacity; and the fact that only a limited number of persons may have occasion to use it does not make of it a private undertaking if the public generally has a right to such use."

The commission has held in the instant case that the transaction complained of is private in character and not public, and that the Byers Company is not a water corporation and not engaged in the same kind of business. The mere fact that it does not come within the excluded classes specified in the proviso of the act, does not bring it within the term of the defining clause unless it be performing a public service or holding itself out as ready to perform the same. The words "not for sale to others" were to take out of the proviso a certain class, but to bring such excepted class within the clause of Art. I, Section 1 of the Act it must be in the nature of service to the *general public if to be brought within the regulation as* "a public service company. The use of the plural term "others" in the phrase "not for sale to others" would also seem to indicate an intention on part of the legislature that the same should not apply to a private sale to one individual or corporation. If otherwise intended, apt words could have been used. " 'Others' means two at least." Climax Specialty Co. v. Seneca Button Co., 103 N. Y. S. 822, 824.

An almost analogous case is that of Humingbird Lumber Co. v. Public Utilities Commission, 39 Idaho 505 (1924), involving the application of an act of assembly, substantially the same as our Public Utilities Act, where it was held that the supply of water by a private corporation to one other corporation did not constitute a sale of water to the public so as to constitute the vendor a public utility. Quoting from the opinion in that case, p. 512: "A corporation becomes a public service corporation, and therefore subject to regulation as a public utility, only when and to the extent that the business of such corporation becomes devoted to a public use." Citing Stoehr v. Natatorium Co., 34 Idaho 217; Thayer v. California Development Co., 164 Cal. 117.

The same view is expressed by GAWTHROP, J., in the

case of Overlook Development Co. v. P. S. C., 101 Pa. Superior Ct. 217, affirmed, per curiam, by the Supreme Court, 306 Pa. 43, as follows, p. 225: " 'The essential feature of a public use is, that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality, that gives it its public character': White v. Smith, 189 Pa. 222, 228. Appellant is not engaged in the business of supplying water to the public. Its business is not affected with a public interest. Therefore, it is not subject to public regulation. See Munn v. People of Illinois, 194 U. S. 113.''

The A. M. Byers Company, under the admitted facts, is neither a de facto nor a de jure public service company.

Throughout appellant's argument appears the controlling thought in support of its appeal, and the test which it asks us to apply, "That the Byers Company has misappropriated a substantial part of the business of a public utility municipally owned." It says that "The arrangement of Byers and Company and Spang-Chalfant would be innocent enough in itself if there were no municipal or public utility plant. Then in such a case no one would contend that this sale constitutes the Byers Company a public utility. It is by appropriation of another utility's business, to whom in law the business belongs, that Byers Company enters the public field. The business taken away was a public utility service, and it remains so after the appropriation.''

The vice of this argument lies in the fact that it assumes that the act of the Byers Company, by reason of the alleged competition, constitutes a public service and makes it a public utility company, and, therefore, should be restrained.

The fact that through the service of A. M. Byers Company to Spang-Chalfant Company, in the manner

indicated, the Borough of Ambridge has lost the revenue theretofore derived from Spang-Chalfant Company is not the test to be applied in determining whether A. M. Byers Company is operating as a public utility company so as to bring it within the jurisdiction of the commission. As stated in the report of the commission, "When a municipality or a public service company constructs facilities to supply its service, it is unfortunate for it if a large consumer upon which it has relied finds it expedient to abandon its service for a substitute commodity, but the consumer cannot be compelled to continue such, nor can the sale of the substitute be forbidden by the Public Service Commission unless made under circumstances which render it a public service itself."

In Citizens Elec. I. Co. v. Lacka. W. V. R. Co., 255 Pa. 176, relied on by appellant, the court in its opinion by Mr. Justice STEWART, p. 184, says: "The right of a corporation to sell and dispose of surplus material on hand, not required in the conduct of its chartered business, is not questioned. ....... It is a mistake to speak of the electric current that appellant proposes to sell to the coal company as surplus current that the company has on hand and for which it has no use. That current has never been developed, and can be developed only as appellant employs its surplus machinery to that end." That case is not authority for the proposition contended for by appellant, that a sale to a single customer of surplus water, amounts in law and in fact to performance of the public utility franchise. The case was decided on the ground that the defendant company was manufacturing the current for the express purpose of sale to another company and by such act was exercising a power not conferred upon it by its charter and, therefore, exceeding its corporate powers. It was decided without reference to the Public Service Act. In the

instant case, the commission did pass upon the status of the respondent in relation to the service alleged to be furnished and found that it was not rendering service as a public utility and therefore not within the jurisdiction of the commission.

The case of Penna. Chautauqua v. P. S. C., supra, as appellant states, is authority for nothing more than the proposition that serving the public is one of the tests. This public service as we have already indicated is lacking in the instant case.

The case of Beetem Lumber Co. v. Carlisle L. H. and P. Co., 273 Pa. 82 (1922) is cited by appellant as authority that one serving only one customer may be a public service company. In that case, the company was created for the purpose of suppling light, heat and power by means of electricity, but had also been supplying live steam to a factory under long term contract. It then filed with the commission a tariff of rates for steam service applicable to all persons, thus setting itself up as a public service steam company. By reason of holding itself out as willing to furnish live steam to the public, the Supreme Court held that the company was a public service company and, therefore, under the jurisdiction of the commission.

The case has been well presented and we have given careful examination to the elaborate briefs on behalf of the respective parties. Our conclusion is in line with the weight of authority and what we consider supported by the better reasoning. We agree with the commission that the A. M. Byers Company, respondent, was not rendering a public service and the order dismissing the complaint was properly entered.

In view of the basis of our decision, it is not necessary to discuss the constitutional questions which have been suggested.

The assignment of error is overruled and the appeal dismissed at the cost of appellant.