ZULICK, J.,
This matter comes before the court on defendant’s preliminary objections to plaintiff’s amended complaint. Plaintiff James Ferraro filed a complaint sounding in breach of contract and tortious interference with contract on October 30, 2014. Ferraro alleged that that defendant Wakwan Lee unreasonably denied permission for Ferraro to assign his commercial lease and that Lee interfered with the contractual relationship with Ferraro and Charles Curry, the individual to whom Ferraro sought to assign the lease.
Lee filed preliminary objections on December 8, 2014, which led to Ferraro amending the complaint before arguments were held on January 9, 2015. Lee again filed preliminary objections to the amended complaint on February 13, 2015, demurring to Ferraro’s claim for tortious interference with contract and arguing Ferraro’s request for punitive damages is scandalous or impertinent matter, or legally insufficient. Both parties filed briefs, and oral arguments were held on April 6, 2015.
The facts as alleged in the amended complaint are as follows. Lee is the owner of a property located at 1113 North 9th Street, Stroudsburg, PA. Amended Complaint, ¶3. Pursuant to a lease agreement dated June 5, 2012, Ferraro leased the premises to operate an ice cream business under the name “Jimmy’s Ice Cream.” Id. at ¶ 4. Paragraph 12 of the lease provides, “[tjenant shall not assign or sublet or in any manner transfer this lease or any estate or interest herein, without the express prior written consent of Landlord, which shall not be unreasonably *152 withheld.” Id. at ¶ 5.
Ferraro entered into an agreement in 2013 with Charles Curry, a third party seeking to purchase the ice cream business from Ferraro. Id. at ¶6. Ferraro and Curry executed a written agreement of sale on January 3, 2014. The purchase price of the business was $124,000.00. Id. at ¶¶ 6-7. The sale was contingent upon Ferraro receiving Lee’s consent to assign the lease or sublet the premises. Amended complaint, ¶ 8.
Lee approached Curry in December, 2013, while Curry was on the premises, inquiring as to whether Curry intended to purchase the ice cream business. Id. at ¶ 9. During the conversation, Lee “maligned” Ferraro, stating that Ferraro was a “liar.” Id. at ¶ 10. Ferraro then contacted Lee to request permission to assign the lease or sublet the premises. Lee requested Curry’s individual financial statements and those for C&L Marketing, Curry’s business. Id. at ¶¶ 11 -12. The financial statements reflected substantial assets for Curry and for C&L Marketing. Id. at ¶14. Curry additionally provided Lee with a letter of reference from his current landlord. Id. at 15.
Curry met with Lee again and requested permission to occupy the premises. Id. at ¶ 16. In addition, Curry offered to enter into an extension of Ferraro’s Lease for a term expiring May 31,2017. Amended complaint, ¶ 17. During the meeting, Lee repeatedly told Curry that Ferraro did not pay his rent on time and that Ferraro was a “liar,” a “loser,” and a “failure at business.” Id. at ¶ 18. Thereafter, Lee refused to grant Ferraro permission to assign the lease or sublet the premises. The contract for the sale of the ice cream business failed due to the landlord’s lack of consent to assignment. Id. at ¶ 32. After the contract failed, Lee asked Curry if he was interested in operating an ice cream *153 business in the premises, suggesting that he open a new ice cream business that did not use the name “Timmy’s Ice Cream.” Id. at 34. Ferraro requests compensatory damages amounting to $124,000.00 as well as punitive damages.
DISCUSSION
Tortious Interference with Contract
The standard for demurrer is “whether, on the facts averred, the law says with certainty that no recovery is possible.” Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co., 613 A.2d 1235, 1238 (Pa. Super. 1992). “Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.” Id.
First, Lee argues that Ferraro failed to state a claim for tortious interference with contractual relationship. The supreme court has stated:
In Birl v. Philadelphia Electric Co.,..., 167 A.2d 472 (Pa. 1961), this court adopted Section 766 of Restatement of Torts and its definition of the right of action for intentional interference with existing contractual relations. There, we stated:
At least since Lumley v. Gye (1853)..., the common law has recognized an action in tort for an intentional, unprivileged interference with contractual relations. It is generally recognized that one has the right to pursue his business relations or employment free from interference on the part of other persons except where such interference is justified or constitutes an exercise of an absolute right: Restatement, Torts, s 766. The special note to comment m. in s 766 points out: There are frequent expressions injudicial opinions that *154 “malice” is requisite for liability in the cases treated in this Section. But the context and course of decision make it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification. ’....
The elements of this tort of inducing breach of contract or refusal to deal, which must be averred in the complaint, are set forth in the Restatement, Torts, s 766, which says, ‘....one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby.’ In other words, the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result.
Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1181-82 (Pa. 1978).
Ferraro has stated a claim for tortious interference with contractual relationship. Ferraro alleges that Lee intentionally interfered with the relationship by “maligning” Ferraro in speaking with Curry, and that as a result of Lee’s refusal to consent to the assignment, the sale of the ice cream business could not occur. After he refused to consent, Lee attempted to obtain a lease directly from Curry. These allegations meet the elements as quoted in Adler. Ferraro has thus stated a claim for tortious interference with contractual relationship.
Alternatively, Lee raises a demurrer to Ferraro’s claim for tortious interference with contractual relationship under the gist of the action doctrine. “[T]he “gist of the *155 action” doctrine[...] operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims.” Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. 2005).
Generally, the doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims. [In Bash v. Bell Tel. Co., 411 Pa. Super. 347, 601 A.2d 825 (1992),] the court explained the difference between contract claims and tort claims as follows:
[although they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals.... To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.
Mirizio v. Joseph, 4 A.3d 1073, 1079 (Pa. Super. 2010).
Here Lee argues that Ferraro’s tort claim is simply a reframing of the contractual claim that Lee unreasonably withheld permission to assign the lease. However, Ferraro’s allegations that Lee maligned Ferraro and referred to him as a “liar” and a “failure at business” with intent to disrupt Ferraro’s contract with Curry, were not related to the contract. In the situation at hand, Lee was allegedly behaving as a third party interfering with the *156 contractual relationship between Ferraro and Curry, and then seeking to obtain Curry as a replacement tenant. Lee had a societal duty to not interfere with their contractual relationship, and he allegedly breached this duty. This tort claim is not barred by the gist of the action doctrine, and this preliminary objection will be denied.
Punitive Damages
Finally, Lee disputes Ferraro’s request for punitive damages under Count II as scandalous or impertinent matterunderPa.R.C.P. 1028(a)(2), as insufficiently specific under 1028(a)(3), or as legally insufficient under 1028(a) (4). “Punitive damages may be awarded for conduct that is outrageous because of the defendant’s evil motive or reckless indifference to the rights of others.... As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant’s actions are so outrageous as to demonstrate willful, wanton, or reckless conduct.” Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005). Furthermore, “this court has stressed that, when assessing the propriety of the imposition of punitive damages, the state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless, or malicious.” Id.
Thus, punitive damages are not available under a claim for breach of contract; however, Ferraro requests punitive damages for an intentional tort, interference with a contractual relationship. As discussed supra, Ferraro’s claim is that Lee maligned Ferraro to Curry and intentionally disrupted their contract to obtain a business advantage. In Pennsylvania, punitive damages are awarded for “outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.” Martin v. Johns-Manville Corp., 508 *157 Pa. 154, 172, 494 A.2d 1088, 1097-98 (1985) (emphasis in original). Plaintiff has alleged conduct that at least rises to the level of reckless indifference to Ferraro’s rights under his contract with Curry. This preliminary objection will be denied.
ORDER
And now, this 22nd day of April, 2015, upon consideration of defendant’s preliminary objections and the briefs and arguments of both parties, the defendant’s preliminary objections are denied.